* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the opinion of award, except for minor modifications. Accordingly the Full Commission affirms the Opinion and Award of Deputy Commissioner Griffin, with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. On December 4, 2001, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and plaintiff was the owner and an employee of Collier Cleaning Services.
2. On December 4, 2001, plaintiff injured his back and ankle by accident, arising out of and in the course of his employment. Plaintiff was standing on a ladder, which slipped out from underneath him, causing him to fall backwards onto his feet and then onto his back.
3. Liability was accepted by a Form 60 on December 12, 2001.
4. The average weekly wage of plaintiff is $1,489.72. The average weekly wage is based upon plaintiff's net profit in the business prior to his injury. The maximum compensation rate for 2001 is $620.00.
5. Plaintiff sustained a burst fracture to the T-I 2 vertebra, a fracture at the base of the right big toe and a fracture of a spur in the left heel. On August 25, 2002, Dr. Murrey performed a T-12 osteotomy, decompression and fusion from T-10 to L-2 with instrumentation and Vitoss bone grafting. Plaintiff continued to have burning pain in his feet. On November 20, 2003, Dr. Duke Crane at Southeast Pain Care implanted a spinal cord stimulator. Plaintiff was seen at Carolinas Pain Institute, P.A. by Dr. Richard Rauk and Dr. James North, who recommended an intrathecal pump. Defendants have authorized implantation of the pump. The parties introduced limited stipulated medical records as Stipulated Exhibit Two.
6. Plaintiff was out of work starting December 4, 2001 and returned to work on February 4, 2002. Plaintiff was taken out of work for back surgery on August 26, 2002 and returned to work at reduced wages on November 15, 2002.
7. A Functional Capacity Evaluation was completed on February 25, 2003, which showed that plaintiff was limited to medium duty work.
8. The parties agree upon the payments made by Traveler's Insurance for benefits. The parties introduce a chart of the payments made as Stipulated Exhibit Three. For 2003, the carrier paid partial disability in the amount of $24,457.18. For 2004, the carrier paid partial disability benefits in the amount of $19,038.57.
9. Plaintiff was taken back out of work on September 6, 2005 by Dr. North and currently remains out of work. Total disability benefits are currently being paid by the carrier.
10. Prior to his injury, plaintiff was the owner and operator of Collier's Cleaning Service, a company that provided lawn care and ``trash outs" or cleaning of evicted or foreclosed properties. Plaintiff did much of the physical work for his company, and did all of the marketing, customer service and estimating work. He had an employee who helped with the heavy lifting, hauling and mowing.
11. Plaintiff' wife, Mary Lou James, is the bookkeeper and secretary for Collier's Cleaning Services. She prepares yearly Profit/Loss statements for the business. The parties introduced the Profit/Loss statements from 2003, 2004 and 2005 as Stipulated Exhibit Four. Plaintiff's earnings equal the net profit of Collier's Cleaning Services.
After his injury, Plaintiff was not able to continue doing the heavy lifting required for his job. Plaintiff changed his role in the company, so that he did the estimating, marketing, customer service and very limited lifting and lawn care. He was forced to hire subcontractors to perform the lifting, hauling and mowing work. He increased his marketing efforts and secured customers who agreed to use his company exclusively for trash out work. By doing so, he was able to secure larger, more profitable jobs. He was able to increase the income into the business, but the larger jobs required more manpower and increased subcontractor costs.
12. As a direct result of his physical limitations from his injury, plaintiff had a decrease in his earnings. Plaintiff represents that in 2003, the business had a net profit of $31,900.38. Plaintiff represents that in 2004, the business had a net profit of $41,552.61. Defendants reserve the right to dispute the net profit of the business, dependant upon the testimony of Mr. David Love, CPA.
13. Plaintiff's wife prepared weekly statement to send to the adjuster of the business earnings and expenses. The parties introduced a sample of the weekly statements as Stipulated Exhibit Five.
14. Plaintiff agrees that he is limited to compensation at the maximum compensation rate allowed by the Industrial Commission of $620.00 a week. Therefore, Traveler's Insurance Company cannot be required to pay more than $32,240.00 per year. ($620.00 x 52 = $32,240.00).
15. Traveler's Insurance has required that payment for partial disability benefits be based on a weekly calculation of the earnings of the business. Travelers has refused to allow losses in the business to be carried over from week to week.
16. Plaintiff contends that his benefits must be calculated on the net earnings of the business-the representation of his earnings. Plaintiff contends that Traveler's has failed to properly compensate him for his lost earning ability.
17. Traveler's Insurance contends that the Industrial Commission requires only an evaluation of weekly earnings and no losses can be carried over from one week to the next.
18. The parties stipulate that the facts outlined herein are true and accurate-both as to payments made by Traveler's and earnings of plaintiff.
19. The parties agree that they will take the post-hearing deposition of Mr. David Love, CPA within forty-five (45) days of October 24, 2005.
 * * * * * * * * * * * EXHIBITS
The following were marked and received into evidence as:
1. Stipulated Exhibit Number 1, Industrial Commission Forms and Pleadings
2. Medical Records
3. Chart of Disability Benefits paid to Plaintiff by Traveler's Insurance
4. Profit/Loss Statements for Collier's Cleaning Service 2003 to 2005
5. Sample Weekly Statements of Income/Expense for Collier's Cleaning Services
6. Factual Stipulations
 * * * * * * * * * * *
Based upon all the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff-Employee was the owner and operator of Collier's Cleaning Service. Prior to December 4, 2001, Plaintiff-Employee handled all of the marketing and customer service for the business and performed much of the physical work. When necessary, an employee assisted Plaintiff-Employee with the heavy lifting and hauling.
2. On December 4, 2001, plaintiff sustained an injury to his back and ankle. Defendants accepted liability for plaintiff's injuries by filing a Form 60 Employer's Admission of Employee's Right to Compensation. The parties agreed that plaintiff's average weekly wage was $1,489.72, which yielded the maximum compensation rate of $620.00 for the year 2001. The parties based the average weekly wage upon the net profits of plaintiff's business prior to the December 4, 2001 injury.
3. When plaintiff returned to work following his injury, he was unable to perform the heavy lifting and hauling for the company. As a result of his physical limitations caused by his compensable injury, plaintiff hired subcontractors to perform the heavy work for the business, which led to a decrease in his post-injury earnings.
4. As the owner of the business, plaintiff's wages vary each week because the customers do not pay for services on a weekly basis. The work is completed by the business and the customers are billed for the services. Plaintiff must first deduct the business expenses prior to paying himself wages. The business expenses include among other items, payments for subcontractor services, insurance premiums, equipment purchases and maintenance, supplies, and taxes. These expenses benefited the business for the entire year, not just for the week in which the expenses were paid.
5. Defendants calculated plaintiff's pre-injury average weekly wages by using the net profit statements of the business. To determine plaintiff's post-injury average weekly wages, defendants compared his pre-injury and post-injury wages on a week-by-week basis, subject to the maximum compensation rate for the year 2001. Defendants contend that the losses incurred by the business after plaintiff returned to work should not be carried over from week to week. However, this method of calculating plaintiff's average weekly wage is unfair to plaintiff, considering the nature of the business and how income to plaintiff is generated. Plaintiff's post-injury earning capacity is most fairly reflected by the yearly net profits for the business.
6. Section 97-30 of the North Carolina General Statutes requires, in pertinent part, "where the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such disability, a weekly compensation equal to sixty-six and two-thirds percent (66 2/3%) of the difference between his average weekly wages before the injury and theaverage weekly wages which he is able to earn thereafter. . . . ." (Emphasis supplied).
7. Defendant Traveler's Insurance refuses to use the yearly net profit of Collier's Cleaning Services to calculate partial disability benefits, on the grounds that benefits have to be paid weekly. While benefits must be paid weekly, there is no provision in the statute which limits benefits by weekly earnings. The statute specifically requires that post-injury earnings be averaged in the same fashion as pre-injury earnings.
8. Inasmuch as the average weekly wage cannot be calculated until the end of the appropriate 52 week period, it is proper for the insurance company to pay initial weekly benefits based upon the methodology used by Traveler's. This ensures the payment of at least some benefits weekly. However, once the average weekly wage is calculated at the end of the appropriate 52 week period, there should be a "true up" to ensure that the injured worker receives all of the benefits due pursuant to N.C. Gen. Stat. §97-30.
9. Defendants' methodology compares actual weekly earnings to the average weekly wage earned by plaintiff at the time of the compensable injury and pays two thirds of the difference, caped at the 2001 maximum compensation rate of $620.00. As shown by the two years in question, defendants' methodology results in a significant underpayment to plaintiff in both years.
10. Stipulated Exhibit Five shows how the overstatement of earning occurs. For the week of April 4, 2004 to April 10, 2004, plaintiff was paid $2,557.50 and had expenses of $51.05, for a net profit of $2,506.45. Because he earned more than his average weekly wage during that week, Traveler's refused to make any payment. For the week of April 11, 2004 to April 19, 2004, plaintiff was paid $2,175.00, but had expenses of $3,235.48. As such, he had a net loss of $1,060.48 in income. The carrier paid the maximum compensation rate of $620.00. However, if the lost earnings from the two weeks are averaged, plaintiff's net profit for those two weeks is only $1,445.97 or $722.98 per week. Using the average weekly earnings ($1,489.72) for those two weeks means that plaintiff should have been paid $1,022.36 for that two week time period — rather than the $620.00. ($1489.72 × 2 = $2,979.44 — $1,445.97= $1533.47 × 0.6667= $1,022.36).
11. In most cases, the injured worker is not self-employed and actual weekly wages (rather than average weekly wages) can be used in computing temporary partial disability benefits. Since there is little fluctuation in actual weekly wages in those cases, the 52 week sum of actual weekly wages divided by 52 most likely is equal to the average weekly wage. However where, such as in the instant case, weekly net earnings fluctuate widely (partly because expenses do not flow smoothly), the sum of actual weekly wages divided by 52 may be vastly different than the calculated average weekly wage.
12. Based upon the stipulated evidence of record, the Full Commission finds that for year 2003, plaintiff's total earnings from his work for Defendant-Employer were $31,908.38, with a loss of $45,565.06 in earnings. Two-thirds of those lost wages equals $30,378.23 of which defendants paid $24,457.18. Plaintiff-Employee is entitled to an additional $5,921.05 in temporary partial disability benefits for the year 2003.
13. Based upon the stipulated evidence of record, the Full Commission finds that for the year 2004, plaintiff's total earnings from his work for Defendant-Employer were $41,552.61, with a loss of $35,912.83 in earnings. Two-thirds of those lost wages equals $23,943.08 of which defendants paid $19,038.57. Plaintiff is entitled to an additional $4,904.51 in temporary total disability benefits for the year 2004.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. As a result of plaintiff's compensable injury by accident, plaintiff was incapable after his injury of earning the same wages he earned prior to his injury in the same employment. Therefore, plaintiff is entitled to receive sixty-six and two-thirds percent (66 2/3%) of the difference between his average weekly wages before the injury and the average weekly wages that he is able to earn thereafter for up to 300 weeks following the date of injury. The 300 weeks will end on or about 09/04/2007. N.C. Gen. Stat. § 97-30.
2. Due to exceptional reasons, the most appropriate and fair method of calculating plaintiff's post-injury earning capacity is to rely on the yearly net profits for the business. In this case, net profits for a 52 week period provided a reasonable and reliable standard for calculating the average weekly wage of a self-employed injured worker. N.C. Gen. Stat. § 97-2(5);Christian v. Riddle and Mendenhall Logging, 117 N.C. App. 261,450 S.E.2d 510 (1994).
3. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to additional temporary partial disability compensation in the amount of $5,921.05 for the year 2003 and in the amount of $4,904.51 for the year 2004.
4. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to additional temporary partial disability for the year of 2005, which has yet to be calculated.
 * * * * * * * * * * *
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. For the partial incapacity plaintiff sustained as a result of his compensable injury by accident, defendants shall pay plaintiff $10,825.56 in additional temporary partial disability benefits for the years 2003 and 2004, subject to a reasonable attorney's fee approved herein. Said amount has accrued and shall be paid in one lump sum.
2. For the partial incapacity plaintiff sustained as a result of his compensable injury by accident, Defendants shall pay plaintiff any difference in temporary partial disability benefits for the year 2005 utilizing the formula elected in this Opinion and Award, subject to a reasonable attorney's fee approved herein.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 1 and 2 of this AWARD is hereby approved for plaintiff's counsel and shall be paid as follows: 25% of the accrued compensation due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This 20th day of September 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER